**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Newport News Division

KRISTINE P.,

      Claimant,

      v.

FRANK BISIGNANO,
*Commissioner of Social Security*,

      Respondent.

Case No. 4:25-cv-33

## <u>OPINION & ORDER</u>

In this Social Security appeal, Claimant Kristine P. seeks review of an Administrative Law Judge's decision denying her claim for disability benefits. ECF No. 1. The Court referred the case to the Honorable Douglas E. Miller, United States Magistrate Judge, for a report and recommendation. ECF No. 6 (referral), 13 (R&R). Judge Miller found no error in the ALJ's assessment of the evidence and recommended that the Court affirm the final decision of the Commissioner. ECF No. 13 at 1. The claimant objected to the R&R. ECF No. 14. For the reasons explained below, the Court will overrule the claimant's objections, adopt the R&R, and affirm the Commissioner's decision.

## I.    BACKGROUND

The claimant filed an application for disability benefits on August 10, 2021, and alleged her disability began on December 13, 2017. ECF No. 5 at 625–26. The application was denied both initially and upon reconsideration. *Id.* at 552–53, 558–60. Thereafter, the claimant sought review before ALJ Carol Matula, who denied the

claim. *Id.* at 89–107. The ALJ found that the claimant was not disabled during the relevant period, December 13, 2017 through March 31, 2022, as she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and she could perform work within the national economy. *Id.* at 96, 105–07. The Appeals Council denied review of the ALJ's decision. *Id.* at 1–6.

## II.   LEGAL STANDARDS

### A.   Standard of Review

When a party files a written objection to a report and recommendation issued by a magistrate judge, the district court must determine *de novo* "those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

Federal courts "uphold a Social Security disability determination if (1) the ALJ applied the correct legal standard and (2) substantial evidence supports the ALJ's factual findings." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020); *see* 42 U.S.C. § 405(g) (statutory authority for judicial review). "In reviewing for substantial evidence, [courts] do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [their] judgment for the ALJ's. Yet even under this deferential standard, [courts] do not reflexively rubber-stamp an ALJ's findings. To pass muster, ALJs must build an accurate and logical bridge from the

evidence to their conclusions." *Arakas*, 983 F.3d at 95 (quotation marks and citations omitted).

When reviewing an ALJ's determination, the Court reads the decision "as a whole." *Smith v. Astrue*, 457 F. App'x 326, 328 (4th Cir. 2011) (unpublished); *Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018) (unpublished). If the Court can "understand what the ALJ did and why [they] did it," then the ALJ has fulfilled their duty of explanation under the Administrative Procedure Act, 5 U.S.C. § 557(c)(3)(A). *Lane Hollow Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 137 F.3d 799, 803 (4th Cir. 1998). "Meaningful review is frustrated—and remand [is] necessary—only where [the court is] unable to fathom the [ALJ's] rationale in relation to evidence in the record." *Britt v. Saul*, 860 F. App'x 256, 262 (4th Cir. 2021) (unpublished) (quotation marks and citation omitted).

### B.    Step Three Equivalency Analysis

To establish disability at step three of the evaluation process, a claimant must present evidence that her impairment, or combination of impairments, meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P., Appendix 1. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). There is no listing for migraine headaches, but equivalency can be established by showing that the findings related to the impairment are at least of equal medical significance to those of a closely analogous listed impairment. 20 C.F.R. §§ 404.1526(b)(2), 416.926(b)(2).

SSR 19-4p, which provides guidance on how to evaluate primary headache disorders in disability claims, identifies epilepsy, listings 11.02B and D, as the most closely analogous impairment whereby equivalency may be established. SSR 19-4p

acknowledges that it is "uncommon" but possible for a person with primary headache disorder to "exhibit equivalent signs and limitations to those detailed in [the epilepsy listings]." For an impairment to meet or medically equal listing 11.02B or D, the condition must be "documented by a detailed description of a typical seizure [or medically equivalent impairment]" and be characterized by:

> 11.02B. Dyscognitive seizures [ ] occurring at least once a week for at least 3 consecutive months [ ] despite adherence to prescribed treatment [ ].
>
> OR
>
> 11.02D. Dyscognitive seizures [ ] occurring at least once every 2 weeks for at least 3 consecutive months [ ] despite adherence to prescribed treatment [ ]; and a marked limitation in one of the following: 1. Physical functioning [ ]; or 2. Understanding, remembering, or applying information [ ]; or 3. Interacting with others [ ]; or 4. Concentrating, persisting, or maintaining pace [ ]; or 5. Adapting or managing oneself [ ].

20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.02. "Dyscognitive seizures are characterized by alteration of consciousness without convulsions or loss of muscle control" and may be accompanied by "blank staring, change of facial expression, and automatisms." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00H.1.b.

"To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B," the following factors are considered: "a detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena" including, for example, aura, duration, and intensity; "the frequency of headache events; adherence to prescribed treatment; side effects of treatment . . . ; and limitations in functioning" resulting from the primary headache

disorder. SSR 19-4p. Those same factors are considered in evaluating whether the headache disorder medically equals 11.02D, and additionally "whether the overall effects of the primary headache disorder on functioning results in marked limitation in[] physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself." *Id.*

## C.     Subjective Complaints

A claimant's subjective complaints of pain are evaluated via a two-step process. SSR 16-3p; *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a). First, there must be a "threshold [] showing by objective evidence of the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Chater*, 76 F.3d at 594 (quotation marks omitted). Second, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated" by "tak[ing] into account not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings, . . . any objective medical evidence of pain[,] . . . and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." *Id.* at 595 (quotation marks and citations omitted).

A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the [other] available evidence." *Chater*, 76 F.3d at 594. However, if

an ALJ selectively cites evidence from the record and misstates and mischaracterizes material facts, substantial evidence may not support the ALJ's decision to discredit a claimant's subjective complaints. *Arakas*, 983 F.3d at 98-99.

## III.   ANALYSIS

The claimant raises three objections to the R&R: (1) that the ALJ failed to provide a sufficient explanation for her step three determination that the claimant's primary headache disorder did not equal Listing 11.02, ECF No. 14 at 1–3; (2) that the ALJ improperly relied on mischaracterized evidence in conducting the step three equivalency analysis, *id.* at 3–4; and (3) in light of such alleged mischaracterization of the evidence, that the ALJ failed to properly consider the claimant's subjective complaints of pain in determining that the claimant has the residual functional capacity (RFC) to perform light work, *id.* at 5.[1] Because the ALJ applied the correct legal standards and provided an adequate explanation for her findings, supported by substantial evidence in the record, all three objections fail.

### A.   Step Three Equivalency Analysis

The claimant first contends that "the ALJ's brief reference to some evidence, while ignoring favorable evidence of medical equivalency, is not satisfactory under the controlling law" and that the ALJ "provide[d] no valid reason for her finding that

---

[1] The Commissioner argues that the claimant's objections should be denied because they are identical to arguments made before the magistrate judge. ECF No. 15 at 1. But as the Commissioner acknowledges, "[i]t is immaterial that [a party's] objections resemble[] arguments [they] had made previously; district courts must solely consider the specificity, not the novelty, of objections to magistrate recommendations." *Elijah v. Dunbar*, 66 F.4th 454, 461 (4th Cir. 2023); ECF No. 15 at 2. Because the Court finds the claimant's objections to be articulated with sufficient specificity, the Court will review them *de novo*.

[the claimant's] migraines do[] not equal [a listed impairment]." ECF No. 14 at 2–3. But as Judge Miller concluded, the ALJ explicitly acknowledged the correct legal standard—SSR 19-4p—and then applied it as required. And the ALJ's explanation allows the Court to understand the ALJ's "rationale in relation to evidence in the record." *Britt*, 860 F. App'x at 262.

After determining that the claimant's migraines were a "severe impairment" at step two, the ALJ ultimately reasoned at step three that "[t]he record does not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal the criteria of any listed impairment[,] and no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairment[] medically equal[s] a listed impairment." ECF No. 5 at 91, 96.

The ALJ correctly identified epilepsy, listings 11.02B and D, as the most closely analogous listed impairment for a primary headache disorder, like migraine, and stated that a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in 11.02B and D. ECF No. 5 at 97. But the ALJ explained that was not the case here, where the migraines "were not intractable, did not involve significant neurological abnormalities, and responded well to nerve blocks and medications." *Id.* With respect to the additional 11.02D factor, the ALJ did "not find marked limitation in physical functioning or in . . . understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself." *Id.* Though brief, this explanation shows that the ALJ considered the nature of the claimant's headache

events as evidenced in the medical record, including their intensity, response to treatment, and impacts on functioning.

The ALJ did not make findings regarding the frequency of the claimant's migraines at step three but did so between steps three and four when determining the claimant's residual functional capacity (RFC)—and that is sufficient. *See McCarty v. Apfel*, 28 F. App'x 277, 279–80 (4th Cir. 2002) (unpublished) (finding that "the ALJ need only review medical evidence once in [the] decision" and therefore, the ALJ's thorough analysis of the medical evidence when determining the RFC was sufficient to determine whether step three was satisfied). The ALJ acknowledged that the claimant's "migraine frequency was measured in headache days or episodes," but found that the record was "unclear" as to the severity of the episodes, for example, noting that in December 2020, only one out of five headache episodes were severe.[2] ECF No. 5 at 101; *see id.* at 1756 (December 2020 progress note stating that claimant had five headache episodes since the last visit, and identifying only one as "severe").

Ultimately, the ALJ determined that the claimant's "course of treatment," which the ALJ described in chronological order from late 2017 through March 2022, was "inconsistent with disabling impairment"—despite perhaps having a sufficient number of migraine episodes to meet the 11.02B and D criteria, based on other factors the ALJ was required to consider under SSR 19-4p—including the severity of the episodes, positive response to treatment, and absence of marked limitation in functioning—the migraines did not equal the medical significance of 11.02B or D. *See*

---

[2] The ALJ also acknowledged the claimant's testimony that she has daily headaches. ECF No. 5 at 98.

ECF No. 5 at 97, 100–01. This determination is supported by evidence in the record.[3] The claimant fails to specify what "favorable evidence of medical equivalency" would render the ALJ's conclusion inaccurate or illogical such that remand is warranted,[4] and the Court finds none. ECF No. 14 at 2.

### B.    Mischaracterized Evidence

The claimant next argues that the ALJ mischaracterized the evidence by relying on doctor's notes that the claimant's migraines were "well controlled" "to imply that [the claimant's] headaches had been cured or subsided altogether." ECF No. 14 at 3–4. But that is not what the ALJ did. Rather, the ALJ observed that the claimant's migraines responded well to various treatments and that, as of mid-2021 and continuing through March 2022, the claimant's headaches were well controlled.

---

[3] *See, e.g., id.* at 986–87 (complete psychiatric evaluation finding that claimant's "[c]ognitive functioning and fund of knowledge are intact and age appropriate"), 1734 (October 2021 progress note describing claimant's migraines as "without aura" and "without status migrainosus, not intractable"), 1743 (May 2021 progress note stating that the claimant's headaches "remain well controlled" with only two headache days since the last visit), 1780 (March 2020 progress note describing claimant's "[a]ttention span and concentration," "[f]und of knowledge," and "[f]acial motor function" as "normal"), 2238 (March 2022 progress note stating that the claimant's headaches "remain[] well controlled" with only one headache day in February and two in March).

[4] The Court has considered the evidence set forth in the claimant's brief in support of her complaint insofar as it relates to the relevant period, including evidence regarding the frequency and potential causes of the claimant's headaches, the claimant's response to treatments, and her complaints of memory issues. ECF No. 10 at 10–13. But none of that evidence is inconsistent with the ALJ's explanation. To the contrary, the ALJ factored this evidence into her analysis. ECF No. 5 at 97 ("claimant's migraines . . . responded well to nerve blocks and medications"), 101 (further detailing claimant's response to treatments, explaining that "[a]lthough claimant's migraine frequency was measured in headache days or episodes," the severity of those episodes was unclear in the medical record, and acknowledging that the claimant reported short-term memory loss whilst her neurological and psychiatric evaluations showed none).

ECF No. 5 at 101. Those determinations are clearly supported by medical evidence in the record—specifically, the progress notes of the claimant's treating neurologist, Dr. Ben-Othmane. *See supra* n.2.

In arguing that the ALJ's reliance on Dr. Ben-Othmane's statements is a mischaracterization of the evidence, the claimant states that the record contains evidence that the claimant was experiencing "ongoing and frequent headaches," including "multiple headache days" in some months, was receiving nerve blocks, and complained of some neurological symptoms, and that imaging showed some abnormality in her cerebral white matter. ECF No. 14 at 4. But with regard to her argument that the record contains conflicting evidence about the frequency of her headaches,[5] the claimant cites to progress notes that post-date the relevant disability period (December 13, 2017 through March 31, 2022).[6] The same is true regarding the cited complaints of neurological symptoms[7] and brain imaging abnormalities.[8] And

---

[5] The claimant argues that the ALJ acknowledged that the claimant had migraines multiple days per month, and in so doing, "contradict[ed] her own reliance on the so-called 'control' of [the claimant's] headaches." ECF No. 14 at 4. But to reiterate, the ALJ only found that the claimant's headaches were well controlled by mid-2021 through March 2022—not that the claimant's headaches "had been cured or subsided altogether." *Id.* And critically, frequency of headache episodes is one factor of several to be considered and does not alone provide a basis for a finding of debilitating impairment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.02(B) & (D); SSR 19-4p.

[6] ECF No. 5 at 117 (progress note for February 2024), 127 (progress note for December 2023), 2377 (progress note for March 2023), 2381 (progress note for January 2023), 2385 (progress note for December 2022), 2389 (progress note for October 2022), 2393 (progress note for September 2022), 2397 (progress note for August 2022), 2400–01 (progress note for June 2022), 2887 (progress visit note for May 2023).

[7] *Id.* at 2887 (progress note dated May 2023).

[8] *Id.* at 370 (impression notes for June 2023 MRI), 2686 (same), 2885 (same).

the Court finds no other evidence in the record that undermines the ALJ's determination that the claimant's headaches were responding positively to treatment and thus well controlled at specific junctures.

Accordingly, the Court finds no mischaracterization that renders the ALJ's equivalency determination unsupported by substantial evidence.

## C.    Subjective Complaints

Finally, the claimant argues that the ALJ failed to properly consider her subjective complaints of pain in light of the aforementioned alleged mischaracterization of evidence. ECF No. 14 at 5. Not so. Here again, the ALJ explicitly acknowledged the proper standard under SSR 16-3p and 20 C.F.R. §§ 404.1529(a), then applied it as required.

The ALJ first found that the claimant's impairments could reasonably be expected to produce the symptoms complained of; however, she then determined that the claimant's statements concerning the intensity, persistence, and limiting effects of the alleged symptoms were "not entirely consistent" with the evidence. ECF No. 5 at 99. In reaching that conclusion, the ALJ observed numerous discrepancies between the claimant's testimony and what she had previously reported to her treating physicians. The ALJ's conclusions are supported by substantial evidence in the record and are not the result of cherry-picking, misstatement, or mischaracterization of evidence.

The ALJ provided a thorough recounting of the claimant's testimony at the administrative hearing on her claim. With respect to headaches, the ALJ noted the claimant testified that she "has daily headaches and gets nerve block injections every

11

6 weeks," "takes Toradol at times," and that "[h]ormones, barometric pressure, and stress . . . trigger[] her headaches." ECF No. 5 at 98. And regarding activities, the ALJ acknowledged the claimant's statement that she cannot walk her dogs, can only walk up to a block and a half very slowly, has short-term memory issues, and only cooks dinner twice weekly. *Id.* at 98–99.

But as the ALJ explained, medical records indicate that the claimant's migraines were not disabling in nature given the effectiveness of various treatments, her provider's notes that the headaches were well controlled by mid-2021 and continued to be well controlled as of March 2022, lack of evidence of altered neurological status during migraines, and exam results indicating intact cognitive function and memory. ECF No. 5 at 101. And the ALJ also observed that the claimant's historically reported activities did not comport with her testimony regarding physical limitations, that state agency medical consultants found that the claimant could perform a range of light work, and that the claimant's own treating provider determined she was capable of low stress work with occasional breaks and absence approximately one day per month due to impairments or treatment. *See* ECF No. 5 at 102–03. There was therefore a logical basis for the ALJ's determination that "the claimant's statements regarding the intensity, persistence[,] and limiting effects" of her migraines were in certain respects inconsistent with other evidence in the record. *Id.* at 99; *see Craig*, 76 F.3d at 594.

Having reviewed the claimant's objections to the R&R, the Court finds that the ALJ applied the correct legal standards, and her factual findings are supported by

12

substantial evidence in the record. Accordingly, the ALJ's decision finding the claimant not disabled will be affirmed.

## IV.  CONCLUSION

Based upon a *de novo* review of the issues to which Claimant Kristine P. objected, the objections (ECF No. 14) are **OVERRULED**. The Report and Recommendation (ECF No. 13) is **ADOPTED.**

The claimant's appeal of the Commissioner's final decision and request for a remand (ECF No. 1) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.[9]

**IT IS SO ORDERED**.

/s/

Jamar K. Walker
United States District Judge

Newport News, Virginia
August 5, 2026

---

[9] The Clerk is **DIRECTED** to terminate ECF Nos. 10, 11, which do not seek independent relief.